UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PETER POULOS, | * | CIV 09-4062-RAL |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | OPINION AND ORDER |
| | * | REGARDING DEFENDANTS' |
| SUMMIT HOTEL PROPERTIES, LLC, | * | MOTION TO STRIKE, MOTION |
| SUMMIT GROUP, INC., AND TRENT | * | FOR PROTECTIVE ORDER, |
| PETERSON, | * | AND MOTION FOR |
| | * | DISQUALIFICATION |
| Defendants. | * | |

Defendants jointly filed a Motion to Strike and for Protective Order, or, Alternatively, for Disqualification (Doc. 31) of Plaintiff's counsel. Defendants contend that portions of Plaintiff's Complaint (Doc. 1) should be stricken because they relate to inadmissible and highly prejudicial settlement correspondence and that discovery concerning the alleged settlement correspondence should be prohibited by a protective order. Alternatively, Defendants move to disqualify Plaintiff's attorneys because they are witnesses regarding the alleged settlement correspondence.

## I. FACTS[1]

Plaintiff Peter Poulos is a former employee of Defendants Summit Hotel Properties, LLC

---

[1] The Court notes that various correspondence between counsel on both sides - including in exhibits filed concerning the motions at issue but not discussed in this Opinion and Order - contained unprofessional hyperbole. See, e.g., (Doc. 33-8). The Court admonishes counsel to refrain from such conduct in correspondence with each other and pleadings before the Court, consistent with the standards of civility, decency, and professionalism expected of lawyers.

and Summit Group, Inc. (collectively "Summit"), both of which are South Dakota entities.[2] Summit owns and manages franchised hotels. One of these hotels, Hyatt Place in Atlanta, Georgia, employed Plaintiff as General Manager. Plaintiff alleges that Summit terminated him on November 13, 2008 in retaliation for reporting fraud committed by his direct supervisor. Defendants contend that Plaintiff voluntarily resigned from his position.

After Plaintiff's employment with Summit ceased, Plaintiff's counsel, Benjamin Stone, sent a letter to Summit and six of its employees, including Peterson, on November 17, 2008. (Doc. 33-1). Plaintiff alleges that this letter was sent under Summit's written Conflict Resolution Process ("CRP"). (Doc. 1 at ¶¶ 63-66). Defendants contend that the letter did not concern the CRP, but rather was a legal demand letter that invited compromise negotiations. (Doc. 32, at 2-3).

In the letter, Stone wrote that "[t]he primary purpose of this letter is to put Summit and each of you on notice of legal claims that Mr. Poulos will be pursuing against Summit and individual wrongdoers, including, but not limited to, claims under the whistle blowing provision of Sarbanes-Oxley . . . RICO, and the statutory and common law of Georgia and South Dakota." (Doc. 33-1, at 2). The letter also put Defendants on notice of litigation hold and document retention obligations and requested information regarding any insurance policy covering the claims asserted in the letter. (Id. at 2-3). Counsel then set forth Plaintiff's factual position with respect to the legal claims, followed by a more detailed description of the claims. (Id. at 3-10). The letter concluded, "If you have any questions regarding this matter, or wish to discuss this

---

[2]The third remaining Defendant is Trent Peterson, a resident of South Dakota and a Director for Summit.

matter before litigation commences, please contact me." (Id. at 10).

On November 26, 2008, Summit responded to Plaintiff with a letter from its outside counsel, Thomas Conley. (Doc. 33-2). Conley's letter set forth facts disputing those contained in Plaintiff's letter, rejecting Plaintiff's legal claims, and informing Plaintiff that various allegations "might expose you to sanctions under Rule 11." (Id. at 5). It closed by stating, "[p]lease be advised that our client will defend itself as vigorously as possible should Mr. Poulos decide to pursue administrative or legal action." (Id.).

Attorney Thomas Munger responded on behalf of Poulos on December 3, 2008 by sending an email with a second letter attached. (Doc. 33-3). The cover email stated, "[a]s you will see, if we do not hear back from you by Monday, we will proceed with our litigation strategy." (Id. at 1). The attached letter contradicted Summit's factual assertions and provided a description of Plaintiff's litigation strategy and the evidence that Plaintiff intended to show "at the trials in these cases." (Id. at 3). Defendants contend that this letter invited settlement discussions in the concluding paragraph, which included the following:

> In short, your clients are in serious legal trouble and I think you know that. I did not have to write this letter. I have given you quite a bit of free discovery. But I have also given you one last chance to convince your clients that it is quite irrational for them to invite the litigation they are about to face. If we do not hear from you otherwise by the close of business on Monday December 8, we will assume your clients invite litigation and we will proceed.

(Id. at 13).

On December 9, 2008, Summit's counsel responded with a letter refuting factual allegations set forth by Plaintiff's counsel. (Doc. 33-5). The letter closed by informing Plaintiff's counsel that:

> The tone and content of your letter strongly suggest that it will be necessary to litigate this matter. As indicated above, Summit is confident of its position and will defend itself

>vigorously. Please be advised that Summit has tendered this claim to its insurer. You may wish to wait for a week or two before filing your lawsuit to see whether the insurer will provide coverage and wishes to discuss early resolution.

(Id.).

Munger replied on December 19, 2008. (Doc. 33-6). In the letter, he accused Summit of withholding documents establishing Summit's liability for the legal claims outlined in his November 17, 2008 letter. (Id. at 1). Munger characterized Conley's letters as "acts of fraud by [Summit] and posited that "[y]our communications with your clients are not protected by the privilege because of the crime-fraud exception to that privilege." (Id. at 7-8). The letter concluded by stating, "[w]e have given you the courtesy of taking the time to review and respond to your letter. We are now going to begin the process of taking legal actions on behalf of Mr. Poulos." (Id. at 8.).

On December 19, 2008, Munger emailed Conley to inform him that Plaintiff had filed an administrative complaint with the Occupational Safety and Health Administration ("OSHA"). (Doc. 33-9). Munger requested that Conley let him know if Summit's insurer retained different attorneys to handle the litigation. (Id.).

Plaintiff filed his Complaint in this Court on May 8, 2009. (Doc. 1). The Complaint makes numerous allegations concerning conduct that occurred after Poulos' counsel sent the initial demand letter and that related to the correspondence written by Stone, Munger, and Conley. The Complaint does not describe any of the correspondence as related to settlement, but it does characterize Poulos' November 17, 2008 demand letter as a "complaint" pursuant to Summit Group's CRP, (Id. at ¶ 66), and Conley's November 26 and December 9 letters as Summit Group's "final decision" under the CRP. (Id. at ¶ 71).

Summit's CRP can be found in its Employee Handbook. (Doc. 33-10). The CRP consists of a three-step process for internal complaints by employees, in which an employee: (1) promptly discusses complaints with an immediate supervisor: (2) contacts the Regional Manager for the Summit Group, explains the underlying facts, and outlines the remedy for the problem; and (3) submits a written complaint to the Summit Group. (Id. at 4).

## II. DISCUSSION

### A. Motion to Strike

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court may "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Court may act on its own or on motion made by either party before responding to the pleading. Fed. R. Civ. P. 12(f). Because Defendants filed their Joint Answer (Doc. 22) prior to the Motion to Strike, the Motion to Strike is untimely under Rule 12(f)(2). However, Summit did object to the presence of allegations based on settlement correspondence in its Answer, (Doc. 22, at ¶¶ 19, 34), and during the Rule 26(f) conference. (Doc. 29, at 6) ("Defendants contend that any exchange of correspondence between counsel for Poulos and counsel for Defendants are post-litigation conduct, including efforts aimed at settlement and cannot form the basis of complaints or allegations against Defendants in this suit."). The Court, therefore, will consider whether to strike the pleadings *sua sponte* under Rule 12(f)(1).

Because striking a pleading "is an extreme measure," motions to strike are "viewed with disfavor and are infrequently granted." Stanbury Law Firm v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977)). Such motions should be denied "unless the challenged allegations have no possible relation or logical

connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." Atl. Recording Corp. v. Raleigh, 2009 U.S. Dist. LEXIS 45938, at *6 (E.D. Mo. June 2, 2009) (citing 5C Wright & Miller, Fed'l Practice and Procedure, § 1382).

Defendants contend that portions of the Complaint should be stricken for referring to inadmissible compromise negotiations under the Federal Rules of Evidence. Fed. R. Evid. 408 states, in relevant part, that:

> Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount . . . : conduct or statements made in compromise negotiations regarding the claim . . .

Fed. R. Evid. 408.

Rule 408 is concerned with "excluding proof of compromise to show liability of [an] offeror." Crues v. KFC Corp., 768 F.2d 230, 233-34 (8th Cir. 1985) (citing *McCormick on Evidence* § 264, at 712 (E. Cleary 3d ed. 1984)). The Eighth Circuit has "viewed the scope of Rule 408 narrowly." Dahlgren v. First Nat'l Bank of Holdredge, 533 F.3d 681, 699 (8th Cir. 2008). Accordingly, Rule 408(a)(2) excludes conduct or statements by a party only when made in "compromise negotiations." See, e.g., Alberto-Culver Co. v. Sunstar, Inc., No. 01 C 0736, 01 C 5825, 2004 WL 1899927, at *22 (N.D. Ill. Aug. 23, 2004) ("Conduct or statements not a part of compromise discussions are not subject to Rule 408."). "While litigation 'need not have commenced for Rule 408 to apply,' there must be some dispute which the parties are attempting to resolve through discussion." Kraemer v. Franklin & Marshall Coll., 909 F. Supp. 267, 268 (E.D. Pa. 1995) (quoting Affiliated Mfrs., Inc. v. Aluminum Co. of America, 56 F.3d 521, 526 (3d Cir. 1995)).

Authority from other federal courts establishes that a demand letter setting forth a party's factual position and asserting legal claims - absent an offer to compromise or settle a claim - does not constitute "compromise negotiations" under Rule 408. See Ullmann v. Olwine, Connelly, Chase, O'Donnell & Weyher, 123 F.R.D. 237, 242 (S.D. Ohio 1987) (finding letters consisting of factual positions, legal demands, and threats of litigation are not "compromise negotiations" within the meaning of Rule 408); Alberto-Culver Co., 2004 WL 1899927, at *22 (admitting letters setting forth parties' factual positions, asserting legal claims, and making legal demands because the letters "fail to contain any suggestion of compromise"); see also Atronic Int'l., GmbH v. SAI Semispecialists of America, Inc., No. 03-CV-4892, 2006 WL 2654827, at *7 n.4 (E.D.N.Y. Sep. 15, 2006) ("Where a letter provides solely demands and lacks any suggestion of compromise, such a document would not be excludable by Rule 408."); contrast Kritikos v. Palmer Johnson, 821 F.2d 418, 423 (7th Cir. 1987) (letters subject to exclusion under Rule 408 because they were written "with the objective of advising the plaintiff of [a] possible compromise solution before legal action was commenced" and they detailed a specific compromise solution for the plaintiff to consider in an attempt to reconcile the differences between the parties). Likewise, letters simply providing notice of a forthcoming legal claim without offering or suggesting any concessions are "outside the ambit of Rule 408." See Rodriguez-Garcia v. Municipality of Caguas, 495 F.3d 1, 10-12 (1st Cir. 2007) (granting request for new trial after district court erred by misapplying Rule 408 and limiting admissibility of letters containing admissions by Defendant when the letters did not constitute compromise negotiations or offers to compromise). Similarly, statements denying the allegations made in a demand letter are not compromise negotiations. See Kraemer, 909 F. Supp. at 268 (E.D. Pa.

1995).

Defendants argue that Plaintiff's allegations concerning post-termination correspondence with Defendants should be stricken as immaterial to his employment claims and inadmissible under Rule 408. On this basis, Defendants move to strike paragraphs 5, 6, 63-88, and 90 from the Complaint. Defendants also move to strike the same paragraphs under Rule 403 because those portions of the Complaint refer to Defendants' insurance coverage and imply - in an inflammatory manner - fraud by Summit. Only the following paragraph of the Complaint, however, directly relates to the conduct of Defendants' counsel:

> In sum, Defendants' fraudulent cover up collapsed with its own documents. Poulos (through his counsel) wrote back to Summit (through its counsel) pointing out these and other contradictions between the CRP Final Decision and Summit's own documents. Summit could not defend itself as it had again been caught in fraud - this time by the highest levels at Summit in South Dakota. Thus, Summit was left with nothing to say and simply tendered Poulos' claim to an insurance company.

(Doc. 1, at ¶ 88).

As to Defendants' Rule 408 argument, nearly all the correspondence at issue does not fall within the Rule's scope. None of the correspondence constitutes compromise negotiations. By its express terms, the November 17 letter served to give "notice of legal claims that Mr. Poulos will be pursuing against Summit and individual wrongdoers." (Doc. 33-1, at 2). The letter made no settlement offer or demand, and did not mention or invite compromise negotiations. In turn, Defendants' responses disputed Plaintiff's allegations, warned Plaintiff's counsel of possible Rule 11 violations, and included neither a settlement offer nor compromise negotiations. Although Defendants argue that Plaintiff's December 3 letter, by stating "I have given you one last chance . . . [i]f we do not hear from you otherwise . . . we will assume your clients invite litigation and will proceed," constituted compromise negotiations, the content of the letter is

analogous to the letters in the Rodriguez-Garcia, Alberto-Culver Co., and Ullmann cases, which held that legal demands, absent any suggestion of compromise, do not rise to the level of compromise negotiations under Rule 408.

On the other hand, Conley's December 9 letter to Munger does invite compromise negotiations. By proposing to Munger that he may wish to refrain from litigation for a short period, until determination of whether Summit's insurer would provide coverage or wished "to discuss early resolution," Conley suggested possible settlement. The final sentence of paragraph 88 of the Complaint refers to this letter, stating "[t]hus, Summit was left with nothing to say and simply tendered Poulos' claim to an insurance company." (Doc. 1, at ¶ 88). This allegation is unfairly prejudicial to Defendants, immaterial to Plaintiff's claim, and concerns plainly inadmissible information. Accordingly, the Court will strike that sentence from the Complaint under Rule 12(f). With respect to the remainder of the Complaint, Defendants' Motion to Strike (Doc. 31) is denied.

### B. Motion for Protective Order

Defendants request that the Court enter a protective order and rule that Plaintiff is not entitled to discovery concerning settlement correspondence and documents protected by the attorney-client privilege and work product doctrine. Defendants contend that, beginning with the November 17 demand letter, the parties recognized the likelihood of formal litigation and the necessity to formulate a litigation and settlement strategy. As a result, Defendants assert that any discovery concerning their response to the demand letter constitutes information directly related either to their legal strategy or post-litigation conduct. The discovery at issue consists of the following requests from Plaintiff's Interrogatories and Requests for Production of Documents

to Defendants (First Set):

> 12. Produce all documents reflecting or relating to Plaintiff's November 17, 2008 written complaint made through his counsel to Kerry Boekelheide and others at Summit (the "Conflict Resolution Process Report")[.]
> 13. Produce all documents reflecting or relating to Summit's investigation of the Conflict Resolution Process Report, including all documents reviewed by Summit in connection with its investigation of the Conflict Resolution Process Report.
> 14. Produce all documents reflecting communications between Summit and Thomas J. Conley regarding the Conflict Resolution Process Report.
> 21. Produce all documents that expressly mention Plaintiff (by name or job title) that were sent or received by any of the following individuals since January 1, 2008: Stephanie Romic, Janis Moeller, Trent Peterson, Kerry Boekelheide, Craig Aniszewski, Lori Richards, Amy Schlagel, JoLynn Sorum, and/or Thomas J. Conley.
> 22. Produce all documents written or produced by Stephanie Romic, Janis Moeller, Trent Peterson, Kerry Boekelheide, Craig Aniszewski, Lori Richards, Amy Schlagel, JoLynn Sorum, and/or Thomas J. Conley, describing or discussing: (a) the Poulos Report; (b) the Conflict Resolution Process Report; and/or (c) the termination of Plaintiff's employment from Summit.

(Doc. 33-11).

Plaintiff argues that Rule 408 is not a basis for entirely prohibiting discovery on a topic. In support, he cites two cases from other jurisdictions: City of Wichita v. Aero Holdings, Inc., 192 F.R.D. 300, 301-02 (D. Kan. 2000) ("Even matter related to settlement negotiations, although barred by Fed. R. Evid. 408 to prove liability at trial, may still be discoverable under Rule 26 if the information sought is reasonably calculated to lead to admissible evidence.") (citation omitted); Alcan Int'l Ltd. v. S.A. Day Mfg. Co., 179 F.R.D. 403, 405 (W.D.N.Y. 1998) (Rule 408 "limits the introduction at trial of evidence regarding settlement negotiations, not the discoverability of the evidence.").

Under the Federal Rules of Civil Procedure, parties ordinarily "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears

reasonably calculated to lead to the discovery of admissible evidence." Id.

Rule 26(b)(3)(A) states that parties generally "may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Such materials may be discovered only if they are otherwise within the scope of discovery, the requesting party shows substantial need for obtaining the materials, and the requesting party demonstrates undue hardship in obtaining the materials by other means. Fed. R. Civ. P. 26(b)(3)(A).

Under Rule 26(c), a party from whom discovery is sought may move for a protective order, which the court may, for good cause, issue in order to protect the party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). Among the types of protective orders include orders forbidding a disclosure or discovery, forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery into certain matters. Id.

Requests 12, 13, and 14 seek materials concerning Plaintiff's demand letter and any subsequent investigation by Defendants into Plaintiff's claims. Request 14 plainly calls for attorney-client communications. Request 12 appears to call for documents prepared in anticipation of litigation by Defendants or their counsel, which would be protected by the attorney-client privilege or work product doctrine. As a result, those Requests do not appear reasonably calculated to lead to the discovery of admissible evidence. Therefore, Defendants' Motion for Protective Order is granted with respect to Requests 12 and 14.

Request 13 may seek some information that is outside of the work product or attorney-client privileges, although other information sought by Request 13 may be privileged. Requests

21 and 22 seek documents concerning Plaintiff that were created as far back as January 1, 2008, which was prior to both the onset of litigation and Plaintiff's demand letter that prompted the reasonable anticipation of litigation. Materials responsive to these requests may include a combination of privileged and non-privileged documents. Thus, Defendants' Motion for Protective Order is denied with respect to Requests 13, 21 and 22. If Defendants intend to withhold any information responsive to these Requests on the basis of the work product doctrine, under Rule 26(b)(5) they must expressly make the claim and describe the nature of the documents, communications, or tangible things not produced or disclosed - and do so in a manner that, without revealing information itself privileged or protected, will enable Plaintiff to assess the claim. Defendants also are required to meet their burden of providing a factual basis for asserting the attorney-client privilege by producing a detailed privilege log stating the basis of the claimed privilege for each responsive document it withholds. See Rabushka v. Crane Co., 122 F.3d 559, 565 (8th Cir. 1997).

## C. Motion for Disqualification of Plaintiff's Counsel

Defendants contend that, if the alleged settlement communications discussed above are not stricken from the Complaint, then Plaintiff's attorneys, Benjamin Stone and Thomas Munger, are witnesses and must be disqualified. Paragraphs 63 through 66 of the Complaint characterize the November 17 demand letter as part of Summit's internal CRP, which Defendants dispute. (Doc. 1). Plaintiff then alleges that the representations in defense counsel's subsequent communications constitute additional fraud by Summit. (Id. at ¶¶ 70-71, 88). Defendants assert that these allegations form a critical component of Plaintiff's fraud theory, a theory that Defendants wish to rebut. To the extent that the fraud theory is premised on the assumption that

the correspondence constituted an internal CRP, Defendants now express an intent to depose Plaintiff's counsel concerning: (1) the issue of whether they understood the parties to be engaged in an internal CRP or settlement negotiations; (2) whether Plaintiff justifiably relied on representations in Conley's correspondence; and (3) whether the correspondence from Plaintiff's counsel contains inaccuracies.

In this diversity jurisdiction case, this Court applies the law of South Dakota to matters regarding attorney conduct. See Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc., 144 F. Supp. 2d 1147, 1153 (D.S.D. 2001), aff'd at 347 F.3d 693 (8th Cir. 2003). South Dakota requires a party moving for disqualification to demonstrate that: (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to preparation of the case. Rumpza v. Donalar Enterprises, Inc., 581 N.W.2d 517, 525 (S.D. 1998).

"Because of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict judicial scrutiny." Midwest Motor Sports, Inc., 347 F.3d at 700-01 (8th Cir. 2003) (quoting Harker v. Comm'r of Internal Revenue, 82 F.3d 806, 808 (8th Cir. 1996)). Disqualification is warranted if "it is foreseeable that current counsel must testify as prohibited by S.D.C.L. § 19-1-3" in support of Plaintiff's fraud claim. Bjornestad v. Progressive Northern Ins. Co., No. 08-4105, 2009 U.S. Dist. LEXIS 74473, at *12 (D.S.D. Aug. 20, 2009). Plaintiff's attorneys state that they do not contemplate testifying on Plaintiff's behalf, as they do not deem it necessary.

Based upon the record before the Court and assessment of the three topics on which Defendants argue Plaintiff's counsel must testify, the Court cannot conclude that testimony by

Plaintiff's counsel is necessary to this case or appropriate in this case. First, counsel's understanding of whether the parties were engaged in a CRP or settlement discussions is immaterial to whether the letter falls within the scope of the CRP; the correspondence either constitutes a claim under the CRP or it does not, and the understanding of Plaintiff's counsel is irrelevant to that determination. Second, even if the Court were to allow the claims related to Defendants' handling of the alleged CRP to continue and admit the attorney correspondence at trial, on the issue of Plaintiff's alleged reliance, only Plaintiff Poulos' testimony - and not the testimony of his attorneys - is relevant or admissible. Finally, whether correspondence from Plaintiff's counsel contains inaccuracies can be revealed by other sources, rather than through disqualifying and then deposing Plaintiff's counsel.

## III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendants' Motion to Strike and for Protective Order, or, Alternatively, for Disqualification (Doc. 31) of Plaintiff's counsel is granted in part and denied in part. The Motion to Strike is granted with respect to the final sentence of paragraph 88 of the Complaint (Doc. 1) and otherwise denied. It is further

ORDERED that Defendants' Motion for Protective Order is granted with respect to Requests 12 and 14 of Plaintiff's Interrogatories and Requests for Production of Documents to Defendants (First Set) (Doc. 33-11) and denied with respect to Requests 13, 21 and 22. It is further

ORDERED that Defendants provide discovery concerning Requests 13, 21 and 22 forthwith and must produce a detailed log of any responsive materials that it withholds on the

basis of the attorney-client privilege or work product doctrine. It is further

ORDERED that Defendants' Motion to Disqualify Counsel is denied.

Dated May 21, 2010.

                      BY THE COURT:

                      ROBERTO A. LANGE
                      UNITED STATES DISTRICT JUDGE