UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| PETER POULOS, | * | CIV 09-4062-RAL |
| --- | --- | --- |
| Plaintiff, | * | |
| vs. | * | OPINION AND ORDER |
| | * | DENYING DEFENDANTS' |
| SUMMIT HOTEL PROPERTIES, LLC, | * | MOTION FOR SUMMARY |
| SUMMIT GROUP, INC., and TRENT | * | JUDGMENT ON PUNITIVE |
| PETERSON, | * | DAMAGES CLAIM AND |
| | * | SETTING TRIAL DATE |
| Defendants. | * | |

## I. INTRODUCTION

Defendants, collectively referred to as "Summit," previously sought summary judgment (Doc. 60) on all claims. Poulos opposed the motion for summary judgment. This Court held a hearing on the motion, considered all the pleadings, and issued an opinion and order granting in part and denying in part Defendants' motion for summary judgment (Doc. 94) on September 10, 2010, granting summary judgment on Counts II through VI. The Court denied summary judgment on Count I alone, which alleged wrongful discharge for whistleblowing, believing at the time that such a claim was a contract claim under South Dakota law based on Johnson v. Kreiser's, Inc., 433 N.W.2d 225, 227 (S.D. 1988) ("a contract claim for wrongful discharge is more appropriate than a tort action.").

On September 23, 2010, Summit filed a motion for summary judgment on Poulos's punitive damages claim. (Doc. 95). Summit correctly noted that, under South Dakota law, punitive damages may not be recovered on breach of contract claims and, based on the Court's order, only a contract claim for wrongful discharge for whistleblowing remained.

-1-

See Longwell v. Custom Benefit Programs Midwest, Inc., 2001 S.D. 60, ¶ 26, 627 N.W.2d 396, 400 (holding that "[i]n South Dakota, punitive damages are not recoverable in a breach of contract action."). Under South Dakota law, punitive damages are recoverable for certain tort claims only. SDCL § 21-3-2 ("In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, . . . the jury may give damages for the sake of example, and by way of punishing the defendant.").

When evaluating whether to grant Summit's motion for summary judgment on the punitive damages claim, this Court became aware of a recent Supreme Court of South Dakota opinion, Tiede v. CorTrust Bank, N.A., 2008 S.D. 31, 748 N.W.2d 748, involving a retaliatory discharge claim. Neither Summit nor Poulos cited Tiede in connection with the prior summary judgment motion. This Court now clarifies and modifies its September 10, 2010 Opinion and Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (Doc. 94) because Tiede renders claims for wrongful termination for whistleblowing to be tort claims under South Dakota law. Therefore, because South Dakota law governs Poulos's wrongful termination claim for the reasons explained below, this Court denies Summit's motion for summary judgment on Poulos's punitive damages claim.

## II. DISCUSSION

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law." In a determination of whether summary judgment is warranted, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, No. 09-1788, 2010 U.S. App. LEXIS 14007, at *3 (8th Cir. July 9, 2010) (quoting Cordry v. Vanderbilt Mortg. & Fin., Inc., 445 F.3d 1106, 1109 (8th Cir. 2006)). "If opposing parties tell two different stories, the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party, as long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them." Id. (internal quotations omitted). A party opposing a properly made and supported motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "To survive summary judgment, a plaintiff must substantiate his allegations with enough probative evidence to support a finding in his favor." Adam v. Stonebridge Life Ins. Co., No. 09-3014, 2010 U.S. App. LEXIS 14492, at *8 (8th Cir. July 15, 2010) (quoting Roeben v. BG Excelsior Ltd. P'ship, 545 F.3d 639, 642 (8th Cir. 2008)).

**B. Choice of Law on Count I**

Poulos pleads a claim for wrongful termination for whistleblowing in Count I of his Complaint. Poulos concedes that "Georgia law does not recognize a whistleblower public policy exception to Georgia's employment at-will doctrine." (Doc. 68, Pl's Opp. to Defs.' Mot. Summ. Judgment, at 18) (citing Eckhardt v. Yerkes, 254 Ga. App. 38, 39, 561 S.E.2d 164, 166 (2002) (affirming dismissal because "the legislature has not created a public policy exception that would allow a plaintiff to recover on a claim of wrongful termination for

whistleblowing")). Consequently, Poulos's claim in Count I cannot survive summary judgment if Georgia law applies to the claim.

South Dakota law differs materially from Georgia law on this claim. "In South Dakota, employment without a specified term is on an 'at-will' basis for which employment can be terminated with or without cause by notice of either party." Anderson v. First Century Fed. Credit Union, 2007 S.D. 65, ¶ 18, 738 N.W.2d 40, 45 (citing SDCL 60-4-4). South Dakota has "recognized exceptions to this doctrine where an 'at-will' termination is contrary to public policy." Id. The Supreme Court of South Dakota has adopted "a narrow public policy exception to the at-will doctrine" permitting an employee "a cause of action for wrongful discharge when the employer discharges him in retaliation for his refusal to commit a criminal or unlawful act." Johnson, 433 N.W.2d at 227.

In Dahl v. Combined Ins. Co., 2001 S.D. 12, 621 N.W.2d 163, the Supreme Court of South Dakota "expanded the public policy exception to include cases in which the plaintiff was terminated for reporting unlawful or criminal conduct to a supervisor or outside agency, essentially whistleblower protection." Smoot v. Am. Tissue Servs. Found., No. 06-4084, 2009 U.S. Dist. LEXIS 13728, at *12-13 (D.S.D. Feb. 20, 2009) (citing Dahl). Dahl applied South Dakota public policy to allow a whistleblowing claim in a manner that "tempered" the "harsh effects of the at-will employment doctrine . . ." Jarman v. Barndt, No. 03-5064, 2006 U.S. Dist. LEXIS 2650, at *18 (D.S.D. Jan. 12, 2006). The Supreme Court of South Dakota in Dahl noted that:

> [w]histleblowing, or the reporting of unlawful or criminal conduct to a supervisor or outside agency, plays an invaluable role in society. As recognized by courts considering this issue, public policy favors the exposure of crime, and the cooperation

> of citizens possessing knowledge thereof is essential to effective implementation of
> that policy. Persons acting in good faith who have probable cause to believe crimes
> have been committed should not be deterred from reporting . . . . Indeed, there is no
> public policy that can be said to be more basic or necessary than the enforcement of
> the state's criminal code or the protection of the life and property of its citizens. The
> laws of the State of South Dakota evidence this basic understanding. See e.g., SDCL
> 22-11-12 (mandating that any person with knowledge of a felony report the same to
> the proper authorities or be subject to a class 1 misdemeanor) . . . The law is feeble
> indeed if it permits [an employer] to take matters into its own hands by retaliating
> against its employees who cooperate in enforcing the law. [T]he employees' dilemma
> is one of balancing a public interest against the potential of private loss, with the
> employee losing either way. We have recognized that when faced with such a
> dilemma many employees . . . would choose to retain their jobs. Such a result is
> untenable for the employee and the citizens of South Dakota.

2001 S.D. 12, ¶¶ 12-14, 621 N.W.2d at 167-68 (internal citations and footnote omitted).

Initially, when adopting a public policy exception to the employment at-will doctrine, the Supreme Court of South Dakota in Johnson "conclude[d] that a contract action for wrongful discharge is more appropriate than a tort action," and that "contract action is predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform a criminal or unlawful act." Johnson, 433 N.W.2d at 227 (citing Brockmeyer v. Dun & Bradstreet, 335 N.W.2d 834 (Wis. 1983). Later, the Supreme Court of South Dakota determined that a wrongful discharge action is a tort, and not a contract, claim. In Tiede, the Supreme Court of South Dakota recognized that Johnson "inconsistently . . . stated that a *contract action* for wrongful discharge was the more appropriate remedy'" while also recognizing "that an employer becomes subject to *tort liability* if its discharge of an employee contravenes some well established public policy." Tiede, 2008 S.D. 31 ¶ 11, 748 N.W.2d at 751-52 (citing Johnson, 433 N.W.2d at 227). The Tiede court then clarified that "[a]lthough retaliatory discharge is concededly an exception to the employment at-will doctrine, the latter concept being rooted in contract, retaliatory

discharge is a tort arising from a breach of public policy duties independent of the employment contract." Id. ¶ 15, 748 N.W.2d at 752. Thus, this Court recognizes that, under South Dakota law, "an action for retaliatory discharge lies in tort rather than contract." Smoot, 2009 U.S. Dist. LEXIS 13728, at *21 (citing Tiede, 2008 S.D. 31, 748 N.W.2d 748). Because South Dakota law differs materially from Georgia law on this tort claim, this Court undertakes a choice of law analysis to determine whether South Dakota law or Georgia law governs Count I.[1]

For tort claims, South Dakota applies the most significant relationship analysis set forth in the Restatement (Second) of Conflict of Laws. Burhenn v. Dennis Supply Co., 2004 S.D.91 ¶ 24, 685 N.W.2d 778, 784 (S.D. 2004). To determine which state has the most significant relationship, the following contacts are considered:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Id. (quoting Restatement (Second) of Conflict of Laws § 145) (1971). "These contacts are to be evaluated according to their relative importance with respect to the particular issue." Id. Under the most significant relationship approach, an issue in tort is governed by "the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6 [of the Restatement (Second) of

---

[1]This Court did not need to engage in a choice of law analysis in its previous opinions because Summit and Poulos agreed that South Dakota law governed contract claims and because there was no difference material to this case between South Dakota and Georgia law on the other tort claims. See Doc. 94.

Conflict of Laws)]." Id. The principles to be considered under § 6 are:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Id. (quoting Restatement (Second) of Conflict of Laws § 6).

The Restatement principles suggest that a key factor in a claim alleging an intentional tort in violation of a state's public policy is the state where the intentional wrongful act occurred. See Restatement (Second) of Conflict of Laws § 145, cmt. c ("If the primary purpose of the tort rule involved is to deter and punish conduct . . . the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship.").[2] "If the purposes sought to be achieved by a local statute or common law rule would be furthered by its application to out-of-state facts, this is a weighty reason why such application should be made." See Restatement (Second) of Conflict of Laws) § 6(2)(b).

The event ultimately triggering Poulos's wrongful termination for whistleblowing

---

[2]The Restatement Comments contrast the analysis of a negligence claim: "On the other hand, when the tort is designed primarily to compensate a victim for his injuries, the state where the injury occurred, which is often where the plaintiff resides, may have the greater interest in the matter." Id. For this reason, the negligence cases cited by Summit are inapposite on this issue. See e.g., Burhenn, 2004 S.D. 91, 685 N.W.2d 778 (South Dakota law applied in a negligence case); Brazones v. Prothe, 489 N.W.2d 900 (S.D. 1992) (South Dakota workers compensation law applies for explosion).

claim is the wrongful termination itself. Here, a South Dakota company made the termination decision in South Dakota and communicated the decision to Poulos through Peterson, who was located in Summit's South Dakota headquarters.

The Restatement principles instruct courts to consider "the relevant policies of the forum and the basic policies of the particular field of law." DeLonga v. Diocese of Sioux Falls, 329 F. Supp. 2d 1092, 1099-1100 (D.S.D. 2004). Under South Dakota law, there is "no public policy that can be said to be more basic or necessary than the enforcement of the state's criminal code or the protection of the life and property of its citizens." Dahl, 2001 S.D. 12, ¶ 13, 621 N.W.2d at 167. A whistleblower intentional tort cause of action is designed to deter and punish retaliation against an employee for reporting a crime.

This Court considers each of the contacts under the most significant relationship analysis. The alleged injury is retaliation consisting of negative evaluations and ultimately termination of Poulos's job at the Hyatt Place in Georgia as a result of Poulos's whistleblowing. As a Georgia resident, Poulos's alleged injury was suffered in Georgia.

Viewing the facts in the light most favorable to Poulos, the place where the conduct causing the alleged injury primarily occurred is South Dakota. Employees based in South Dakota - Trent Peterson, JoLynn Sorum, and Lori Richards - principally oversaw Summit's investigation into Poulos's alleged whistleblowing. (Doc. 64-26; 64-6, ¶ 8). Poulos asserted that Summit's employees in South Dakota, notably Peterson, made a decision from South Dakota to retaliate against Poulos by terminating Poulos's employment. The alleged telephone statements by Peterson instructing Poulos to resign or else be terminated in two weeks, as well as various decisions causing the termination made by other Summit

employees, were made in South Dakota. (See Doc. 1, Complaint ¶ 4.). According to Poulos, on November 13, 2008, Peterson issued from South Dakota a letter to Poulos stating that Summit had accepted Poulos's resignation, though Poulos maintains that he never resigned. (Doc. 69, at 16).

The parties agree that their residence is split, so the domicile factor is not very helpful. At all relevant times, Poulos was a Georgia resident. Defendant Peterson is a South Dakota resident. Defendant Summit Hotel Properties, LLC is a South Dakota limited liability corporation and Defendant Summit Group, Inc. is a South Dakota corporation, both with their principal places of business in South Dakota.

Under the circumstances of this case, choice of law on Count I pivots on the place where the parties' relationship was centered. The employer, Summit, is a South Dakota resident that allegedly committed unlawful practices in South Dakota against a Georgia resident and employee. Poulos asserted that Summit ordered and directed his discharge for reporting illegal conduct to individuals based in South Dakota. The tortious conduct alleged arises out of a contract between the parties. That contract, a restrictive covenant, contained an enforceable choice-of-law provision designating South Dakota law as applicable to "[the restrictive covenant] and the rights and obligations of the parties [t]hereunder." (Doc. 64-8, at 3). Both Poulos and the defendants agreed in briefing that South Dakota law governs any contract claim in this case.[3] Although this Court finds that Count I properly pleads a claim

---

[3](Doc. 62, Defs.' Br. in Support of Motion for Summary Judgment, at 15 ("Poulos's employment agreement contains a choice of law clause providing that it is governed by South Dakota law . . . Since South Dakota law was selected in this instance, the clause is enforceable."); Doc. 77, Defs.' Reply Br. in Support of Mot. for Summary Judgment, at 19 ("The parties agree that Poulos's breach of contract claim is governed by South Dakota law.")). Poulos

for retaliatory discharge, which sounds in tort under South Dakota law, the relationship giving rise to Count I is firmly rooted in a contract expressing that South Dakota law governs the rights of the parties thereunder. As the Tiede court recognized, "retaliatory discharge is concededly an exception to the employment at-will doctrine, the latter being rooted in contract." 2008 S.D. 31, ¶ 11, 748 N.W.2d at 751-52. Based on the existence of the choice of law clause, coupled with the roots of the tort of retaliatory discharge in South Dakota, the justified expectations of the parties and the basic policies underlying the particular field of law weigh in favor of application of South Dakota law to Count I.

Neither party cites any South Dakota case addressing the choice-of-law analysis in the context of a wrongful termination of employment tort claim. Poulos relies principally on a New Jersey case to argue that South Dakota has a compelling interest in enforcing South Dakota laws and regulating, deterring, and punishing misconduct and unethical practices by its businesses, and to preserve job security of employees who refuse to partake in the illegal and unethical conduct of its businesses. See D'Agostino v. Johnson & Johnson, Inc., 628 A.2d 305 (N.J. 1993). Although New Jersey used the governmental-interest analysis in D'Agostino, "the relevant policies of the forum" do factor into the most significant relationship test used by South Dakota. Burhenn, 685 N.W.2d at 784 (quoting Restatement (Second) of Conflict of Laws § 6). Therefore, this Court finds D'Agostino to be somewhat instructive to the choice of law determination.

D'Agostino was a resident of Switzerland who was employed in a position marketing pharmaceuticals in Switzerland by a Swiss company, Cilag, which was a wholly owned

---

argued that South Dakota law applies to all claims in this case, whether contract or tort.

subsidiary of a New Jersey-headquartered corporation, Johnson & Johnson ("J&J"). Id. at 306-07. When hired, D'Agostino signed an employment agreement with Cilag in Switzerland stating that Swiss law controlled the agreement. Id. at 307. D'Agostino only traveled to New Jersey once during the course of his employment. Id. at 308.

D'Agostino signed a required J&J Policy Statement that required him to comply with the Foreign Corrupt Practices Act ("FCPA") and J&J's policy against the use of corporate funds for unlawful purposes, including bribes. Id. at 307-08 He subsequently refused to approve a payment that he suspected was a bribe, and his employment was terminated. Id. at 308. D'Agostino filed a lawsuit in New Jersey against J&J and two J&J officials, alleging wrongful termination in violation of New Jersey law, which had an exception to the employment at-will doctrine for a termination violating specifically expressed public policy, including termination for refusing to approve payment of a bribe. Id. at 309. Swiss law had no public policy exception to its employment at-will doctrine. Id.

Defendants sought dismissal on the ground that Swiss law applied. The court held that New Jersey law applied, reasoning that:

> New Jersey has no interest in regulating Swiss employment relationships. But this case is not about regulating just Swiss employment relationships. It is about regulating the conduct of parent companies in New Jersey that engage in corrupt practices through a subsidiary's employees. For the 'particular issue' here is the tort liability of a domestic corporation for ordering and directing the discharge of a subsidiary's employee for refusal to participate in corrupt practices. That issue is not encapsulated within a Swiss employment doctrine but embraces as well the conduct here of a New Jersey parent company that has assertedly engaged in conduct that would violate a clear mandate of public policy.

Id. at 311.

Similar to the situation in D'Agostino, Poulos filed suit and was employed by a

company located in a state where he did not reside. The forum state had an exception to the employment at-will doctrine for a termination violating specifically expressed public policy, whereas Poulos's home jurisdiction did not. Like the state of New Jersey in D'Agostino, South Dakota has an interest in regulating the conduct of its resident parent companies that retaliate against employees for whistleblowing. See Restatement (Second) of Conflict of Laws § 6(c).

Summit contends that the South Dakota-related aspects of Poulos's employment relationship are greatly outweighed by the location of Poulos's work site in Georgia. Poulos was hired in Georgia, worked on a daily basis in Georgia, and his supervisors met Poulos and delivered evaluations in Georgia. Poulos never traveled to South Dakota as part of his employment. After his employment ended, he applied for and received unemployment insurance benefits in Georgia and filed an administrative claim in Georgia.

Summit cited Brazones v. Prothe, 489 N.W.2d 900 (S.D. 1992), for the proposition that an employment relationship is centered where an employee lives and primarily works. Id. at 903. However, Brazones did not involve an intentional tort claim. Id. Also, in Brazones, both the plaintiffs and the immediate supervisors resided in South Dakota, a fact considered important by the Brazones court. Id. at 903-05.

Summit also cited a Seventh Circuit case with some similar facts,[4] Tanner v. Jupiter Realty Corp., 433 F.3d 913 (7th Cir. 2006), for the proposition that Georgia law should

---

[4]In Tanner, employee Tanner brought a whistleblowing claim against his former employer. Tanner worked in the Georgia office of an Illinois-headquartered company. He sued his former employer, alleging that his supervisors working in Illinois decided to terminate him in retaliation for whistleblowing activity. The employer terminated Tanner while both were in South Carolina. Id. at 914.

apply. However, the Seventh Circuit in Tanner did not decide the choice of law issue in that case. Instead, it ruled that summary judgment for the employer would be affirmed regardless of which state's law applied. Id. at 916-17. Therefore, Tanner does not assist this Court's analysis.

On the other hand, Poulos argues that the relationship was centered in South Dakota. According to Poulos's assertions, Summit directed the employment relationship from South Dakota. Defendant Peterson is based in South Dakota, and Craig Aniszewski, the senior executive to whom Poulos reported Romic's conduct, works in South Dakota. The Handbook and Code of Ethics were issued from South Dakota. Two of the three people involved in the decision to issue warning letters to Poulos - Trent Peterson and Lori Richards - worked in South Dakota. Janis Moeller worked neither in South Dakota nor Georgia. Poulos reported his claim of retaliation to Richards by calling her while she was in South Dakota, who in turn told Poulos to call Peterson, who also was located in South Dakota. Peterson told Poulos from South Dakota that Poulos must resign immediately or be terminated, and the letter ostensibly accepting Poulos's resignation and effectively terminating Poulos's employment was sent by Peterson from South Dakota. In addition, Summit has admitted that, under the choice-of-law provision in the restrictive covenant, Poulos's employment-at-will status is governed by South Dakota law. Count I arises out of a public policy exception - albeit under tort law - to the employment at-will doctrine. Under the circumstances, South Dakota law applies to Count I. In turn, because Count I of the Complaint alleges an intentional tort on which genuine issues of material fact exist, the claim supports a punitive damages claim at this point when viewing the facts in the light most

favorable to Poulos, as this Court must do in ruling on Summit's summary judgment motion.

### III. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendants' Motion for Summary Judgment on Punitive Damages Claim (Doc. 95) is denied. It is further

ORDERED that the Court hereby clarifies its September 10, 2010 Opinion and Order granting in part and denying in part Defendants' Motion for Summary Judgment (Doc. 94) to reflect that Count I pleads a tort claim that is governed by South Dakota law. It is further

ORDERED that a jury trial of the case is set for March 21, 2011, beginning at 9:00 a.m. in the United States Courthouse in Sioux Falls. A final pretrial conference and motion hearing shall take place on Friday, March 18, 2011, at 10:00 a.m. All motions in limine, requested instructions, designations of deposition testimony to be offered at trial, and lists of witnesses and exhibits shall be due by March 4, 2011. Any objections and responses thereto are due by March 11, 2011.

Dated November 23, 2010.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE